# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PATTY JANE FORESTER,

      Plaintiff,

  v.                                           Civil Action 2:16-cv-1156
                                                 Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff, Patty Jane Forester, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

    **I.**      **BACKGROUND**

Plaintiff applied for SSI on May 14, 2013, alleging disability beginning on the same date. (Tr. 14, PAGEID #: 103). Plaintiff requested a hearing after her claim was denied initially and upon reconsideration. (*Id.*). Administrative Law Judge William Spalo (the "ALJ") held a video hearing on August 17, 2015. (*Id.*). On October 7, 2015, the ALJ issued a decision finding Plaintiff is not disabled under the Social Security Act. (Tr. 26, PAGEID #: 115).

Plaintiff filed this case on December 9, 2016 (Doc. 1), and the Commissioner filed the administrative record on February 17, 2017 (Doc. 9). Plaintiff filed a Statement of Errors on March 30, 2017 (Doc. 10), the Commissioner responded on May 15, 2017 (Doc. 13), and Plaintiff filed a Reply Brief on May 25, 2017 (Doc. 14).

This case presents a narrow issue for consideration. Specifically, Plaintiff argues that the ALJ's decision must be reversed because he improperly found Plaintiff capable of performing light work despite evidence that she medically requires the use of a cane. With that narrow issue in mind, the Court examines the relevant hearing testimony, factual and medical background, and the ALJ's decision.

### A. Hearing Testimony

During the hearing, Plaintiff testified that she has been using a cane to walk since 2008. (Tr. 56, PAGEID #: 145). Plaintiff stated that she did not have the cane with her at the hearing, however, because it was stolen. (*Id.*). Plaintiff explained that she wears braces on both knees, holds onto things to walk, but she still trips often. (Tr. 56–57, PAGEID #: 145–46).

### B. Factual and Medical Background

Plaintiff was born on May 7, 1962 and has a high school education. (Tr. 38, PAGEID #: 127). Plaintiff suffers from obesity, degenerative joint disease of the left knee, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, hypertension, lumbar strain, gout, and borderline intellectual functioning. (Tr. 17, PAGEID #: 106).

At least three medical opinions reflect that Plaintiff does not require a cane to ambulate. Specifically, medical consultant Dr. Sushil Sethi examined Plaintiff on August 27, 2013, and noted, *inter alia*, that Plaintiff could "walk on tiptoes and heels and can squat." (Tr. 482–83, PAGEID #: 576–77). Dr. Sethi also observed that Plaintiff was "not using any ambulatory aids" and displayed a normal gait. (Tr. 483, PAGEID #: 577). Similarly, the state agency reviewing physicians did not view Plaintiff as requiring a cane to ambulate and opined that she is capable

of performing a limited range of light work. (Tr. 140, PAGEID #: 230; Tr. 153, PAGEID #: 243).

In contrast, two medical opinions refer to Plaintiff's use of a cane. On January 10, 2014, Dr. David Klein examined Plaintiff two days after she experienced a "twisting injury." (Tr. 519, PAGEID #: 613). Under "[d]iagnosis and associated orders for this visit," Dr. Klein ordered "[w]eight bearing as tolerated" and "cont use of cane." (Tr. 521, PAGEID #: 615). Dr. Sarah Scalley of Sunrise Vision Clinic commented on Plaintiff's use of a cane during an exam on April 2, 2014. (Tr. 628, PAGEID #: 723). Under "spectacle plan," Dr. Scalley noted that she advised Plaintiff of "issues with bifocal and vision" particularly due to her "having a cane for walking." (*Id.*). Although Dr. Scalley discussed with Plaintiff the option of having separate "distance glasses" and "near glasses," Plaintiff chose bifocals. (*Id.*).

**C. Relevant Portions of the ALJ's Decision**

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 14, 2013, the application date, and has the following severe impairments: obesity, degenerative joint disease of the left knee, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, hypertension, lumbar strain, and borderline intellectual functioning. (Tr. 17, PAGEID #: 106). The ALJ likewise found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment and has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b). (Tr. 18–19, PAGEID #: 107–108). However, the ALJ determined that Plaintiff should not climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, crawl, kneel, crouch, stoop, and balance. (Tr. 19, PAGEID #: 108). The ALJ indicated that Plaintiff

should be limited to simple, routine, and repetitive tasks and must avoid concentrated exposure to pulmonary irritants, poorly ventilated areas, and chemicals. (*Id.*).

The ALJ noted that Plaintiff reported problems walking and found that her "main problem appears to be concerning the impairment of her knees." (Tr. 20–21, PAGEID #: 109–110). The ALJ examined Plaintiff's record from her visit to Dr. Sethi on August 27, 2013, which reflected that Plaintiff was not using any ambulatory aids and displayed a normal gait. (Tr. 21, PAGEID #: 110; *see also* Tr. 24, PAGEID #: 113 (discussing Dr. Sethi's findings that Plaintiff "was able to walk on tiptoes and heels and squat" and "was not using any ambulatory aids and displayed a normal gait")).

The ALJ relied on Dr. Sethi's consultative examination findings as an example that "[t]he claimant's assertions are not supported by the medical records to the extent alleged." (Tr. 23, PAGEID #: 112; *see also id.* ("[T]he clinical findings in the medical records do not support the claimant's extensive allegations.")). In other words, the ALJ found Plaintiff's reports of "difficulty getting around without her cane" and testimony "that she has to hold onto things" and "trips all the time" were unsupported by the medical evidence. (*Id.*; *see also id.* ("The claimant reported that non-steroidal anti-inflammatory drugs (NSAIDS) were effective in managing her knee problems.")).

The ALJ likewise addressed Plaintiff's twisting injury on January 10, 2014, which prompted an examination by Dr. Klein. (Tr. 21, PAGEID #: 110). The ALJ stated:

> It was noted that the claimant used a cane, and Dr. Klein advised her on the continued use of the cane. Nevertheless, the claimant has reported that medication for her knees has been effective (Exhibit B14F/25).

(*Id*.; *see also* Tr. 23, PAGEID #: 112 (noting Plaintiff's testimony that "she has used a cane since 2008," that "the claimant's doctor recommended that she use a cane," and that "[t]he medical records indicate that medications have been effective")).

The ALJ found that Plaintiff has a high school education, is able to communicate in English, and no past relevant work. (Tr. 25, PAGIED #: 114). Hence, the transferability of job skills was a non-issue. (*Id*.). The ALJ also noted that Plaintiff was born on May 7, 1962, and was 51 years old, or an individual closely approaching advanced age, on the date the application was filed. (*Id*.). Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*.). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 14, 2013, the date the application was filed. (*Id*. (citing 20 C.F.R. 416.920(g)).

## II. LEGAL STANDARD

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.

*Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff argues that the ALJ erred in finding that she can perform the exertional demands of light work because she "medically requires the use of a cane." (Doc. 12 at 1). The Court disagrees and concludes that substantial evidence supports the ALJ's decision.

The ALJ is responsible for determining a Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). An RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of an ALJ. *See* 20 C.F.R. §§ 404.1527(e), 405.1546. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (stating that the responsibility for determining a claimant's RFC rests with the ALJ, not a physician). An individual's RFC may be impacted by a requirement to use a hand-held assistive device. 20 C.F.R. Part 404, Subpt. P. App. 1, § 1.00(J)(4).

Here, the ALJ formulated the following RFC:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for no climbing ladders, ropes, or scaffolds and occasional crawling, kneeling crouching, stooping, balancing, and climbing ramps and stairs. She must avoid concentrated exposure to pulmonary irritants (fumes, odors, dusts, and gases), poorly ventilated

areas, and chemicals. Work is limited to simple, routine, and repetitive tasks.

(Tr. 19, PAGEID #: 108).

Plaintiff challenges this RFC on the ground that "the ALJ has failed to provide any reason for rejecting the evidence that [she] uses a cane to ambulate, as advised by her treating physician." (Doc. 12 at 6). Plaintiff points to two mentions of her cane in the medical record. (*Id.*). The first occurred on January 10, 2014, when Dr. Klein examined Plaintiff two days after her twisting injury. (Tr. 521, PAGEID #: 615). Under "[d]iagnosis and associated orders for this visit," Dr. Klein ordered "[w]eight bearing as tolerated" and "cont use of cane." (*Id.*). The second arose on April 2, 2014, when Dr. Scalley examined Plaintiff at Sunrise Vision Clinic on April 2, 2014. (Tr. 628, PAGEID #: 723). Under "spectacle plan," Dr. Scalley noted that she advised Plaintiff of "issues with bifocal and vision" particularly due to her "having a cane for walking." (*Id.*). Although Dr. Scalley discussed with Plaintiff the option of having separate "distance glasses" and "near glasses," Plaintiff opted for the bifocal. (*Id.*).

Unlike many cases involving the use of a cane, the ALJ did not overlook evidence concerning Plaintiff's need for the cane or fail to address this issue. *See, e.g.*, *Pruett v. Colvin*, 85 F. Supp. 3d 1152, 1162 (N.D. Cal. 2015) ("The ALJ's decision did not even mention Dr. Carlson's statements concerning Pruett's need for a cane, much less weigh those statements against competing evidence to reach a well-reasoned conclusion."); *Simmons v. Comm'r of Soc. Sec.*, No. 1:12cv2591, 2013 WL 3873952, at *9 (N.D. Ohio July 25, 2013) ("The ALJ fails to make any reference to Dr. Lee's prescription for a cane."); *Newell v. Astrue*, 869 F. Supp. 2d 875, 892 (N.D. Ill. Apr. 23, 2012) (remanding where the ALJ failed to discuss plaintiff's claim that "he had been required to use a walking cane ever since his motorcycle accident"); *Jones v. Comm'r of Soc. Sec.*, No. 1:10-cv-840, 2012 WL 967509, at *5 (W.D. Mich. Feb. 8, 2012)

7

("Despite acknowledging that plaintiff had been prescribed a cane a few months before the administrative hearing, the ALJ did not include the use of a cane in plaintiff's RFC and provided no explanation for this omission."); *Penn v. Astrue*, No. 2:09-cv-169, 2010 WL 547491, at *6 or decline to address this issue. (S.D. Ohio Feb. 12, 2010) ("The complete absence of any direct consideration of this issue (in fact, the Court is unable to find the word 'cane' anywhere in the administrative decision) leads to the conclusion that this issue was simply overlooked.").

Rather, the ALJ noted that Plaintiff reported problems walking and found that her "main problem" concerned an "impairment of her knees." (Tr. 20–21, PAGEID #: 109–110). The ALJ recognized that, although Plaintiff claimed that she "has used a cane since 2008" and had alleged on onset date of May 14, 2013 (Tr. 23, PAGEID #: 112; Tr. 14, PAGEID #: 103), Dr. Sethi's records from August 27, 2013, reflect that Plaintiff was not using any ambulatory aids and displayed a normal gait. (Tr. 21, PAGEID #: 110; *see also* Tr. 24, PAGEID #: 113 (discussing Dr. Sethi's findings that Plaintiff "was able to walk on tiptoes and heels and squat" and "was not using any ambulatory aids and displayed a normal gait")). The ALJ also addressed Dr. Klein's advice on January 10, 2014, that Plaintiff continue using cane after her twisting injury, but he found evidence demonstrating that medication had been effective in treating Plaintiff's impairment. (Tr. 21, PAGEID #: 110; Tr. 23, PAGEID #: 112 (citing Exhibit B14F/25)). Finally, the ALJ recognized Plaintiff's testimony that "she has difficulty getting around without her cane" . . . and that "she has to hold onto things and … trips all the time." (Tr. 23, PAGEID #: 112). However, based on the foregoing, the ALJ found that Plaintiff's "assertions are not supported by the medical records to the extent alleged." (*Id.*; *see also id.* ("[T]he clinical findings in the medical records do not support the claimant's extensive allegations.")).

Consistent with that determination, Plaintiff cites no other record evidence supporting her need for a cane. Indeed, Plaintiff admits that she has not used a cane since hers was stolen in 2013. (Doc. 12 at 5; *see also* Tr. 56, PAGEID #: 145 (Plaintiff's testimony that she did not have a cane at the August 17, 2015 hearing because "[i]t was stolen")). Moreover, as Defendant explains, the state agency reviewing physicians opined that Plaintiff could perform a limited range of light work and did not require a cane to ambulate. (Doc. 13 at 4–5 (citing Tr. 140, PAGEID #: 230; Tr. 153, PAGEID #: 243)).

Simply because Plaintiff may have been "using a cane at various times," does not mean the ALJ was required to include it in Plaintiff's RFC. *See, e.g.*, *Holt v. Astrue,* No. CV 08-02052(RZ), 2008 WL 4965877, at *1 (C.D. Cal. Nov. 19, 2008) (finding that the ALJ's reliance on "the medical consultant's determination that the cane was not medically necessary" constitutes "evidence what a reasonable person would conclude supports the determination"). Indeed, where there is conflicting evidence concerning the need for a cane, "it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence." *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012).

Looking to Dr. Klein's advice alone, the evidence could arguably support a more restrictive RFC. That, however, is not the question for this Court. *See, e.g*, *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference"). Instead, the Court must decide if substantial evidence supports the ALJ's conclusion, and it does. Taking into account all that the ALJ considered, substantial evidence supports his RFC determination.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors is **OVERRULED** and judgment is entered in favor of Defendant.

IT IS SO ORDERED.


Date: October 23, 2017 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE